IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HAROLD JOHN LEVENDOSKI and
THOMAS HAROLD LEVENDOSKI,

          Plaintiffs,

v.

ASSOCIATED MILK PRODUCERS, INC. and
EUROFINS DQCI, LLC,

          Defendants.

OPINION AND ORDER

20-cv-402-wmc

---

Plaintiffs Harold and Thomas Levendoski operate a dairy farm in Clear Lake, Wisconsin. Unfortunately, their dairy herd was afflicted by mycoplasma. They bring this Wisconsin negligence claim against a dairy distributor and testing facility, essentially alleging detrimental reliance on earlier, false negative test results provided by both defendants that prevented them from taking earlier action to combat the mycoplasma outbreak. In response, defendants Associated Milk Producers, Inc., and Eurofins, DQCI, LLC, both move to dismiss on the basis that plaintiffs' complaint is barred by Wisconsin's broad economic loss doctrine, and in any case, plaintiffs' fail to state a cognizable claim. (Dkt. ##5, 6.) For the reasons set forth below, the court will deny defendants' motions to dismiss.

ALLEGATIONS OF FACT[1]

Harold and Thomas Levendoski operate a dairy plant ("Levendoski Dairy" or "the dairy"), and they sold milk to Associated Milk Producers, Inc. ("AMPI"). (Compl. (dkt. #1-1) ¶ 5.) AMPI is a milk distributor or, in the parlance of Wisconsin's administrative code, a "bulk milk weigher and sampler." *Id; accord* ATCP § 65.01(5) (defining bulk milk weigher and sampler). The relationship between Levendoski Dairy and AMPI was ongoing, but the dairy does not allege that it was governed by contract. (Compl. (dkt. #1-1).) The dairy does allege AMPI negligently collected or controlled its milk samples. (*Id.* ¶ 8.)

Plaintiffs further allege that these samples are ultimately tested for quality and safety, including the presence of mycoplasma, by Eurofins DQCI, LLC ("DQCI"). (*Id.* ¶ 10.) Levendoski Dairy received negative DQCI Mycoplasma test results through AMPI, until they learned that the tests were inaccurate on March 21, 2014. (*Id.* ¶ 6.) On that day, the dairy "received objective information confirming that their dairy had a major Mycoplasma problem." (*Id.*) Unfortunately, before March of 2014, the dairy had allegedly relied upon defendants' negative test results concerning the management of its herd, which it claims were erroneous because of either both defendants' or one of the defendant's negligence. (*Id.* ¶ 10.) Ultimately, this reliance led to reduced milk production, excessive culling and replacement costs, and other unspecified damages to Levendoski Dairy. (*Id.*)

---

[1] The court accepts as true all well-pleaded facts and allegations in the complaint, drawing all reasonable inferences in favor of plaintiffs. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 (7th Cir. 2010).

OPINION[2]

Defendants have moved to dismiss, alleging the claim is barred by the economic loss doctrine. Additionally, defendant DQCI alleges that plaintiffs' complaint fails to state a claim for negligence, in that it fails to allege causation. Although both defendants' arguments fail, the reasons are distinct. Accordingly, the arguments for each party are addressed separately below.

**I. Associated Milk Producers, Inc.**

"The economic loss doctrine is a judicially-created principle that generally precludes contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship," unless purely or predominantly for services. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶¶ 33-35, 262 Wis.2d 32, 662 N.W.2d 652. "The doctrine generally 'requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim.'" *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233 (quoting *Digicorp*, 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652). However, "where there is a general duty, even though it arises from the terms of the contract, the breach of that duty may constitute actionable negligence." *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 722, 329 N.W.2d 411, 414 (1983).

---

[2] Plaintiffs filed this lawsuit in Polk County Circuit Court. Defendants removed it to this court pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs are citizens of Wisconsin. (Not. of Removal (dkt. #1) ¶ 2.) Defendant AMPI is a citizen of Kansas and Minnesota. (*Id.* ¶ 3.) Defendant DQCI is a citizen of Delaware and Iowa. (*Id.* ¶ 4.) The amount in controversy exceeds $75,000. (*Id.* ¶ 5.)

3

This general duty reads broadly at first glance, particularly when taken together with Wisconsin's expansive negligence law. *See, e.g.*, *A. E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974) ("A party is negligent when he commits an act when some harm to someone is foreseeable."); *Colton v. Foulkes*, 259 Wis. 142, 146, 47 N.W.2d 901, 903 (1951) ("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort."). However, Wisconsin courts have interpreted the economic loss doctrine broadly to insulate commercial transactions from negligence suits. *See* John J. Laubmeier, Comment, *Demystifying Wisconsin's Economic Loss Doctrine*, Wis. L. Rev. 225 (2005).

Strictly speaking, therefore, the economic loss doctrine is still considered an "exception" to the general availability of a negligence suit at common law, *Landwehr*, 110 Wis. 2d at 720, but in practice, parties who contract for goods under the laws of Wisconsin generally now presume negligence suits to be barred. Of course, as noted, there are exceptions (e.g., when the contract is exclusively or predominantly for services). Most relevant to plaintiffs' claim against defendant AMPI is a recognized exception where a duty exists "independently of the performance of the contract." *Madison Newspapers v. Pinkerton's Inc.*, 200 Wis. 2d 468, 481, 545 N.W.2d 843, 848-849, 1996 Wisc. App. LEXIS 271, *15 (Wis. Ct. App. February 29, 1996)) (quoting *Dvorak v. Pluswood Wis., Inc.*, 121 Wis. 2d 218, 220, 358 N.W.2d 544, 545 (Ct. App. 1984)). Under this exception (to the exception), "the existence of a contract is ignored when determining whether [the] alleged misconduct is actionable in tort." *Id.* (alteration in original).

Plaintiffs argue that the economic loss doctrine cannot bar their suit because they did not explicitly note the existence of a contract in their complaint. This argument is misguided at best. Even if the absence of a sales contract between a dairy and its regular milk distributor did not test the limits of plausibility, contractual privity is not a requirement of Wisconsin's broad economic loss doctrine. *Daanen & Janssen v. Cedarapids, Inc.*, 216 Wis. 2d 395, 397, 573 N.W.2d 842, 843 (1998) (explaining that the "application of the economic loss doctrine to tort actions between commercial parties is generally based on three policies, none of which is affected by the presence or absence of privity between the parties"). As the *Daanen* Court explained, the *opportunity* to contract appears enough, even if the parties fail to enter into contract formally. *Id.*[3]

Fortunately for plaintiffs, however, the existence of a formal contract is of little moment here, since as noted, an independent duty is not precluded by a contract; it exists or does not, as the name suggests, *independent* of contractual obligations. *Madison Newspapers,* 200 Wis. 2d at 473. Said another way, even presuming that the business relationship between the parties -- or more broadly understood, the "state of things" between them -- may originate from contract, so long as the *duty* arises independently, the doctrine does not bar a negligence suit. *Landwehr*, 110 Wis. 2d at 722 (quoting 38 Am. Jur. *Negligence* § 20).

---

[3] Although more recent decisions have called portions of this opinion into question, it is because Wisconsin has since *broadened* its economic loss doctrine, not because of any attempt to narrow it. *See Reinke v. Jacobson*, 2017 WI App 80, ¶20, 378 Wis. 2d 741, 905 N.W.2d 844.

Setting aside the contract, defendants argue that a milk distributor has no other duty under Wisconsin law to apprise a dairy farmer of his mycoplasma problem, so a negligence action cannot be sustained. But this ignores the heavily regulated nature of the relationship between milk producers and distributors, especially in Wisconsin. In particular, those regulations provide that a

> bulk milk weigher and sampler who collects a bulk milk shipment from a dairy farm shall collect the milk sample for the dairy plant operator . . . and sampler shall promptly deliver the sample to the dairy plant operator, or to a milk testing laboratory designated by the dairy plant operator.

Wis. Admin. Code ATCP § 65.38(2).[4] As previously discussed, AMPI is just such a "bulk milk weigher and sampler," since AMPI "collect[ed] a bulk milk shipment from [the Levendoskis'] dairy." *Id.* Therefore, not only does AMPI have a legal duty to collect a milk sample, but that duty is owed to "the dairy plant operator" -- here, the Levendoskis -- regardless of any contractual relationship between them, express or implicit. *Id.* Thus, on whatever basis defendant was acquiring the Levendoskis' milk, this obligation attaches *independent* of any contract. Moreover, because this obligation arises independent of contract law, Wisconsin's economic loss doctrine does not appear to bar a negligence suit premised on AMPI's dereliction of duty in collecting and delivering the milk samplers, at least under the advantage of various, favorable inferences at the pleading stage.[5] Of course,

---

[4] While now abrogated Wisconsin Administrative Code ATCP § 60.17(2) controlled the contested events in 2014, this court refers to the current, effectively identical version of the regulation out of convenience, and to accord with defendant AMPI's references to the current version of the regulation in its reply. (Def. AMPI's Reply (dkt. #19) 6.)

[5] Of course, this assumes Wisconsin attaches a duty arising out of this regulatory obligation under its common law tort law, but this does not appear a stretch. *See, e.g., Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 462 (7th Cir. 2001) (explaining that under Wisconsin law, a regulation

6

any claim to economic losses would be limited only to those caused by a breach of that narrow obligation.

## II. Eurofins DQCI, LLC

### A. Economic Loss Doctrine

Defendant DQCI also seeks dismissal under the economic loss doctrine, but its arguments differ from those of AMPI's. DQCI posits two core reasons for granting its motion to dismiss. First, anticipating an argument that DQCI only provided services, which are generally excluded from the economic loss doctrine's reach, it notes that those services were provided incidental to AMPI's sale of milk, and thus, should still be covered by that doctrine. Second, DQCI relies on *Custom Underground, Inc. v. Mi-Tech Servs.*, No. 10-CV-222-JPS, 2011 U.S. Dist. LEXIS 121997, 2011 WL 5008343 (E.D. Wis. Oct. 20, 2011), a decision which suggested an expansion of Wisconsin's economic loss doctrine to cover the provision of services, although curiously only where parties lack privity *and* no separate duty was owed the plaintiff.

Addressing DQCI's first argument would seem straightforward as all parties seem to agree that pure service contracts are excluded from the economic loss doctrine. *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI App 15, 269 Wis. 2d 286, 674 N.W.2d 886. While DQCI argues services *incidental* to a sale of goods are generally included within the bounds of the doctrine, mimicking the approach of the Uniform Commercial Code, *Biese v. Parker Coatings, Inc.*, 223 Wis. 2d 18, 27, 588 N.W.2d 312, 316 (Ct. App. 1998), this argument

---

can establish the required duty of care in a negligence claim).

fails to acknowledge factual differences between that analogy and that here, except perhaps through its second argument: the party providing the allegedly incidental service, DQCI, appears to be legally separated from the party providing the primary goods, AMPI. Absent at least some evidence of privity between the defendants, it is hard to see how DCQI's service obligation to plaintiffs could be found "incidental" to AMPI's purchase of milk. *See Cousin Subs Systems, Inc., v. Better Subs Development Inc.*, No. 09-C-0336, 2011 WL 4585541 (E.D. Wis. Sept 30, 2011) (distinguishing application of economic loss doctrine to contracts that are "predominantly" for goods rather than services).

Even if this distinction were not dispositive, the court is unable to determine sufficiently the relationship in-fact between the parties to conclude that DQCI is entitled to the protection of economic loss doctrine that is unavailable to the principally contracting party, AMPI. Indeed, Wisconsin law separately provides that dairy plants like plaintiffs have a legal right to designate a laboratory of their choosing to test milk samples. Wis. Admin. Code ATCP § 65.38(2) ("[The] sampler shall promptly deliver the sample to the dairy plant operator, or to a milk testing laboratory designated by the dairy plant operator."). Since AMPI delivered the sample to DQCI, presumably it did so based on plaintiffs' designating it as their testing laboratory, in which case, DQCI's provision of services would appear predominantly, if not wholly, separate from the original sale of the milk between plaintiffs and AMPI. On the other hand, an inference *at least* as likely could be drawn that co-defendant AMPI delivered the milk to DQCI incidental to its own purchase in violation of or under exception to Wisconsin milk product regulations. Regardless, drawing all inferences in favor of plaintiffs as the non-moving party, defendant

DQCI's services will be presumed separate from any agreement between plaintiffs and co-defendant AMPI at the pleading stage as required by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the same inference as above can reasonably lead to a conclusion that no contractual privity exists between plaintiffs and DQCI, consideration of defendant's second argument, relying on the Eastern District of Wisconsin decision in *Custom Underground,* is not dispositive. This is because that decision not only hinged on a lack of privity, but consistent with Wisconsin law, on a lack of an independent duty. For the same reasons that AMPI would appear to have a duty to collect and deliver a milk sample to a designated tester, DQCI would appear to undertake a duty to test that sample accurately, independent of contract. *See supra* n.6. Finally, this court would be remiss not to point out the uncertain force of *Custom Underground*. First, the Eastern District of Wisconsin recognized its expansion of Wisconsin's economic loss doctrine, despite acknowledging it was "ambiguous whether the Wisconsin courts would [do so]." *Custom Underground*, 2011 WL 5008343, at *8. Second, the Wisconsin Supreme Court has explicitly noted that the policies underlying the economic loss doctrine are not "affected by the presence or absence of privity between the parties," yet *Custom Underground* distinguishes itself from settled Wisconsin law only for "situations, such as here, in which no contractual privity exists between the parties." *Id.* at *7; *Daanen & Janssen*, 216 Wis. 2d at 397. While counter-veiling factors might support following *Custom Underground* under the facts of this case, the court is disinclined to reach such a fact-intensive question at the pleading stage, and so it will not.

### B. Failure to state a negligence claim

In addition to arguing that plaintiffs' claim is barred by the economic loss doctrine, defendant DQCI also challenges the adequacy of plaintiffs' allegations. "A defendant is owed 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). However, dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations. *See Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 557. "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur*, 581 F.3d at 602 (quoting *Iqbal*, 556 U.S. at 678).

In its motion to dismiss, DQCI does not dispute notice of its alleged wrongdoing in the delivery of a service -- the failure to "accurately test and report Bulk Tank Culture Results" -- nor do they dispute notice of the harms plaintiff has suffered as a result, including "reduced milk production, excessive cow culling and cow death." (Compl. (dkt. #1-1) ¶ 7.) Instead, defendant argues that the link between its breach of duty and the harm is purely conclusory. However, plaintiffs provide that very link, alleging that the "operation and management of its herd" was both based on reliance on the accuracy of the test results it received from DQCI, and the inaccuracy of those tests lulled it into a false

sense of security, causing the harms that now beset the dairy, which could otherwise have been averted. While that claim is broad, it plausibly captures everything from what antibiotics it used (or did not use), the cleaning procedures it implemented (or did not implement), and countless other details of herd management. The lack of specific facts as to the causal connection does not mean that plaintiffs have failed to state a plausible claim, nor that DQCI lacks notice. "*Specific facts* are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (emphasis added). The only limit is that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Here, it is certainly more than speculative that plaintiffs' herd management was based on reliance of defendant's testing, and thus, was a causal link to their damages. Although later stages of litigation will demand evidence from plaintiffs to support their negligence claim, they have not failed to state a claim, and dismissal would be premature at the pleading stage.

## ORDER

IT IS ORDERED that defendants' motions to dismiss (dkt. ##5, 6) are DENIED.

Entered this 27th day of April, 2021.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

11